Eimco Corporation *v.* Lombardi, Appellant.

Argued December 15, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Horace N. Lombardi,* with him *Anthony J. Smith,* for appellant.

*David H. Kubert,* with him *Henry I. Jacobson,* for appellee.

OPINION BY WATKINS, J., June 15, 1960:

This is an appeal from the judgment of the Court of Common Pleas No. 2 of Philadelphia County entered on a verdict in favor of the Eimco Corporation, the plaintiff-appellee, and against Joseph Lombardi & Sons, the defendant-appellant, in the amount of $883, plus interest; and from the order of the court below dismissing the defendant's exceptions and request for a new trial.

The Eimco Corporation is a manufacturer of mining equipment, and sells direct to contractors; Joseph Lombardi & Sons is such a contractor, engaged in construction work. They have done business with each other for several years, in that the defendant purchased from the plaintiff several pieces of equipment, repair parts and material on an open account.

The defendant, contemplating the start of a tunnel construction job, after some negotiations with the plaintiff's agent, purchased two Model 12-B-55 Eimco Rockershovels under a written contract of purchase. The court below described the equipment: "A Rockershovel is a machine used in tunnel construction; it is used for mucking, that is to say for removal of the dirt and debris from the tunnel 'heading'. The shovel loads the dirt and debris into little cars by means of which the dirt is transported to the shaft and removed to the surface for disposal. The movement of the Rockershovel is similar to that of a man with a shovel propelling dirt over his shoulder."

The machines were manufactured by the plaintiff and delivered to the defendant on the job site in October 1952. When put in operation, the one machine functioned properly; the defendant had trouble with the other one and after several hours of use had to repair it. The parts which caused the malfunction were either defective or damaged by improper or negligent operation. But, whatever the cause, the machine did break down four times during its early operation. After notice to the plaintiff of the difficulty, the entire lower deck of the machine was replaced by the plaintiff without charge, after which the machine operated without further trouble. The plaintiff contends that the difficulty arose because the machine was operated under water, causing the lubricant in the gear box to be washed away and the friction created caused the bearings and the gears to be damaged. The defendant claims the malfunction to be due to defective parts but presented no proof of this contention.

In May of 1953, the plaintiff brought this assumpsit action against the defendant for the unpaid balance of the account. The defendant, although admitting the claim, sought to avoid it by way of set-off and counter-

claim growing out of the purchase of the rockershovels. The matter was tried before President Judge ALESSANDRONI of the court below, without a jury, and a verdict was entered in favor of the plaintiff in the amount of $883, plus interest, and defendant's counterclaim and set-off were dismissed. Defendant's exceptions and request for a new trial were denied by the court en banc and judgment entered on the verdict.

The evidence at the trial was limited to defendant's counterclaim because it was admitted that the equipment set forth in the complaint had been received and the prices were those agreed upon. The defendant claimed in the nature of a set-off the cost of repairs to the machine in the amount of $821.15; that misrepresentations were made by the plaintiff's authorized agent; breach of warranty of fitness for purpose; negligence and failure to give defendant credit for replacement parts. The defendant also alleged fraud and demanded judgment for consequential damages and the purchase price of the shovel upon rescission of the sale. The total demand amounted to $7504.12.

We agree with the court below that, "The allegations of fraud and negligence can be summarily disposed of since there is not a scintilla of evidence to support either. The alleged breach of warranty of fitness for purpose can also be dismissed without further comment since the warranty, if any there be, is that of merchantable quality. Defendant has failed to prove by competent testimony that any of the parts for which plaintiff seeks payment were replacement parts covered by the express warranty on defective parts. There is no evidence that any repairs were made or authorized by plaintiff or were to be made at plaintiff's expense."

The contract of purchase upon which the counterclaim is based was entered into on June 3, 1952, and

provides the important issue in this case as to how it is affected by the provisions of the Sales Act of 1915, P. L. 543, 69 PS §1 et seq. Among the terms of this contract were the following pertinent sections:

"All equipment offered herein is fully guaranteed for a period of one (1) year from the date of initial operation and any parts which prove defective through improper workmanship or material will be replaced without charge f.o.b. Salt Lake City, Utah. . . .

"(4) (a) The Company agrees to have repaired at its factory, or to replace without cost F.O.B. its factory, any defective parts of its manufacture which within one year from date of shipment, and following examination by the Company's inspectors shall prove to have been defective in either workmanship or material when shipped. The Company's liability for damages or losses incurred or caused by such defectives shall be limited to the foregoing. . . .

"(6) The Company shall not be held liable under this contract for any special, indirect or consequential damages whatsoever. . . .

"(10) (a) This contract expresses the entire agreement between the parties hereto and all previous negotiations, conversations and understandings are merged herein; and this contract cannot hereafter be modified except by a writing signed by the Customer and approved by an officer of this Company. All proposals are subject to price changes, without notice, fifteen days after date issued."

In addition to the above clauses contained in the contract of purchase, the plaintiff pleaded as new matter, and it was admitted by the defendant, that a custom and usage of the mining and industrial machinery industry existed whereby liability was limited as set forth in the agreement of sale.

Defendant had previously purchased similar machines from the plaintiff, was familiar with their construction, use and limitations. The machine here in question being the same as the others, except it was of a different gauge, this sale appears clearly to be one of a specified article under its patent and trade name by specific model number and one to be used generally in the business of the defendant and not for use for a particular purpose. And as stated in Sec. 15 of the Sales Act, supra: "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." *Demos Const. Co., Inc. v. Serv. Sup. Corp.,* 153 Pa. Superior Ct. 623, 34 A. 2d 828 (1943); *Hill & MacMillan, Inc. v. Taylor,* 304 Pa. 18, 155 A. 103 (1931); *Tinius Olsen Test. Mch. Co. v. Wolf Co.,* 297 Pa. 153, 146 A. 541 (1929).

The only question remaining is whether there was a breach of any implied warranty of merchantability. This is a warranty implied by law that the goods are reasonably fit for the general purpose for which they are sold. Section 15, second paragraph of the Sales Act, supra, 69 PS §124. *Frantz Equip. Co. v. The Leo Butler Co.,* 370 Pa. 459, 464, 88 A. 2d 702 (1952).

In the case at hand two machines exactly alike were purchased, delivered and used at the same time. One broke down after slight use because of being operated under water, and not because of any defect, according to the plaintiff. Defendant has no explanation as to why the machine would not operate. If plaintiff's evidence is accepted, there, of course, could be no breach. Aside from the evidence, any possible claim by defendant under this contention is negatived by the written contract entered into by the parties, the pertinent portions of which are set forth above and clearly provide that the plaintiff's liability for defec-

tive parts is limited to replacement thereof and not for any damages or loss sustained as a result thereof. The plaintiff's position is further buttressed by the existence of a custom of the mining industry to so limit liability.

Section 71 of the Sales Act, supra, 69 PS §332, provides, inter alia: "Where any right, duty or liability which would arise under a contract to sell or a sale, by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale. . . ." In the instant case we have both elements present and this is controlling. Plaintiff fulfilled its agreement by replacing the damaged parts and restoring the machine to operation without charge, which was their only obligation under the contract.

Judgment affirmed.