

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-2007

# Vanalt Electrical v. Selco Mfg Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5239

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Vanalt Electrical v. Selco Mfg Corp" (2007). *2007 Decisions.* Paper 1129.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1129

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  05-5239/06-1434
_____

VANALT ELECTRICAL CONSTRUCTION INC,

*Appellee/Cross-Appellant*

v.

SELCO MANUFACTURING CORPORATION,

*Appellant/Cross-Appellee*


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-06741)
District Judge:  Honorable Ronald L. Buckwalter


_____


Argued March 27, 2007

Before:  FISHER, JORDAN and ROTH, *Circuit Judges*

(Filed: May 8, 2007)
_____

Mason Avrigian, Jr.  **[ARGUED]**
Jeffrey P. Wallack
Wisler, Pearlstine, Talone, Craig,
   Garrity & Potash
484 Norristown Road - #100
Blue Bell, PA   19422
   *Counsel for Appellee/Cross-Appellant*

Stephen R. Knox   **[ARGUED]**
Michael T. Hensley
Wilson, Elser, Moskowitz, Edelman
    & Dicker
33 Washington Street - 17th Fl.
Newark, NJ   07102
    *Counsel for Appellant/Cross-Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

In this contract case, Selco Manufacturing Corp. ("Selco") appeals from a judgment of the United States District Court for the Eastern District of Pennsylvania, entered on October 26, 2005 following a jury trial, against Selco in favor of Vanalt Electrical Construction, Inc. ("Vanalt") in the amount of $300,000.  Vanalt cross-appeals from the District Court's order, entered on December 15, 2005, denying Vanalt's request for prejudgment interest.

For the reasons that follow, we will vacate the judgment against Selco and remand for a new trial to determine whether Vanalt may recover damages in this case and, if so, in what amount.

I.

In September 2000, Vanalt entered into a contract with PKF-Mark III, Inc., agreeing to perform electrical work on a project for the Southeastern Pennsylvania Transportation Authority ("SEPTA").  Vanalt turned to Selco in June 2001 for a price

2

quote on multi-outlet underground cable connectors for the SEPTA project. Selco sent

the quote to Vanalt on June 20, 2001. By March 2002, SEPTA had approved the use of

Selco's connectors, and, on March 12, 2002, Vanalt sent a purchase order to Selco for 73

connectors at a total price of $54,906. The purchase order confirmed that the parties had

agreed on the specifications for the connectors, including the crucial specification that the

connectors "shall be pre-insulated, watertight and submersible." Selco started supplying

the connectors in June 2002, and all the connectors were installed by Vanalt between June

and November 2002.

Vanalt tested the system containing the installed connectors for the first time in

November 2002. Essentially every segment of the system failed. Vanalt notified Selco of

the test results on December 9, 2002, contending that pin-holes in the insulation caused

the connectors to fail in a wet environment. Vanalt's efforts to have Selco take

responsibility for resolving the problems with the connectors were not successful and,

under pressure to meet its contractual obligations on the SEPTA project, Vanalt decided

to fix the connectors itself. By August 2003, the connectors were satisfactory.

After Selco refused to pay Vanalt for the costs associated with fixing the

connectors, Vanalt filed suit in the United States District Court for the Eastern District of

Pennsylvania on December 16, 2003, claiming that Selco had breached its contract, its

express warranty that the connectors would be watertight and submersible, and its implied

warranty that the connectors would be fit for a particular purpose. At trial in October

2005, the jury found in favor of Vanalt on all three claims and awarded $300,000 in damages. The District Court thereafter denied Vanalt's request for prejudgment interest. Selco appeals from the judgment entered by the District Court pursuant to the jury's verdict. Vanalt cross-appeals on the order denying prejudgment interest.

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. We have jurisdiction to review the District Court's judgment and order pursuant to 28 U.S.C. § 1291.

## II.

Selco argues that the District Court erred during the trial by ruling as a matter of law that the contract between Selco and Vanalt did not include terms that limited Selco's liability for consequential damages arising from the connectors. Selco argues, and we agree, that the District Court's ruling was in effect a judgment as a matter of law against Selco on the affirmative defense that it had limited its liability by adding certain terms to the contract.[1] Our review of the District Court's ruling is therefore plenary. *Villanueva v.*

---

[1]The District Court ruled as follows:

> [The first of the] issues remaining that I told counsel I'd discuss here is the
> issue of the term and condition [sic] of the contract, which I find, as a
> matter of law, was not a part of this contract. The evidence doesn't support,
> in my opinion, a finding by the jury that these terms and conditions
> identified in the record . . . were part of the contract and the jury would
> have to guess to reach such a conclusion.

The Court's reasoning demonstrates that the ruling was indeed a judgment as a matter of law on Selco's defense. Vanalt's brief indicates that it also interpreted the District

4

*Brown*, 103 F.3d 1128, 1133 (3d Cir. 1997). We must determine "whether, viewing the evidence in the light most favorable to the losing party, no jury could decide in that person's favor." *Id*. Having viewed the evidence in that light, we conclude that whether Selco had communicated to Vanalt terms that limited Selco's liability and whether Vanalt accepted those terms are questions of fact that must be decided by a jury.

Selco presented evidence that its standard contract terms and conditions state that Selco "will not allow or be liable, under any circumstances, for any special, incidental, indirect or consequential damages of claims arising from the supply or use of any material furnished by it." Vanalt presented evidence that it never received the document containing that language and so the limitation on liability was not part of its contract with Selco. In response, three Selco employees testified that it was Selco's standard policy to attach the document to every quote it submitted.

The District Court ruled that, even viewing the evidence in the light most favorable to Selco, no jury could conclude that the document was part of the contract. We must disagree. According to Federal Rule of Evidence 406:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

---

Court's ruling in this way. Vanalt Answering Brief at 26 (quoting *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004), for this Court's standard of review for a judgment as a matter of law).

Fed. R. Evid. 406. Here, the testimony of Selco's employees regarding Selco's routine practice is relevant evidence that Selco acted in conformity with that practice by transmitting to Vanalt the document containing the limitation on liability. *See Envirex, Inc. v. Ecological Recovery Assocs., Inc.*, 454 F. Supp. 2d 1329, 1333 (M.D. Pa. 1978), *aff'd* 601 F.2d 574 (3d Cir. 1979) (concluding that evidence of routine business practice was relevant to show that a document was part of a contract). When we view the evidence in the light most favorable to Selco, as we must, we cannot conclude that no jury could have accepted Selco's evidence that its standard terms were sent to Vanalt and that Vanalt accepted them as part of the contract. The District Court thus erred by not submitting those factual issues to the jury.

III.

Selco also argues that the District Court erred by instructing the jury that Selco bore the burden of proof as to whether Vanalt provided reasonable notice to Selco of the breach, as required by 13 Pa. Cons. Stat. § 2607. "[O]ur review is plenary when the issue is whether the instructions misstated the law." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 245 (3d Cir. 2006). We agree with Selco that the District Court's instruction on this point was incorrect.

Selco's sale of goods to Vanalt is governed by Pennsylvania's enactment of the Uniform Commercial Code ("UCC"), 13 Pa. Cons. Stat. § 1101, et seq. According to that statute, a buyer that has accepted goods under a contract "must within a reasonable time

after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 13 Pa. Cons. Stat. § 2607(c)(1) (Pennsylvania enactment of UCC § 2-607(c)(1)). At trial, Selco argued that Vanalt failed to provide reasonable notice. Selco alleges it did not hear of any problem with the connectors for more than five months after beginning the deliveries of them in June 2002. On this issue, the District Court instructed the jury that "[t]he buyer must, within a reasonable time, provide the seller with notice of the problem and thereby provide the seller with a reasonable time and opportunity to cure the breach." The Court stated that the issue of notice and opportunity to cure was a defense on which "the defendant bears the burden of proof."[2]

---

[2]The District Court's instruction was as follows:

> [I]f you . . . conclude that there's been a breach of . . . warranties or the contract, before considering damages you must consider whether there was an opportunity given to SELCO to cure. It's called an opportunity to cure. And this simply means this. When a buyer purchases goods from a seller that are nonconforming, . . . [t]he buyer must, within a reasonable time, provide the seller with notice of the problem and thereby provide the seller with a reasonable time and opportunity to cure the breach. Now, all of this is just common sense. You find a fault, you say, hey, guys, can you fix it up? That's what we're talking about. Now, a reasonable time to cure a breach depends on the nature and attending circumstances of the breach and the actions needed to effect the cure. Based upon the evidence, you must decide whether Vanalt in this case provided SELCO with reasonable notice and opportunity to cure prior to Vanalt having to remedy the problem at its own cost and whether SELCO ever notified Vanalt of any desire to inspect, test, or sample the multi-outlet connectors that Vanalt refused or failed to allow. . . . The question is, has defendant shown here that plaintiff did not give them an opportunity to cure? And, as I said, in determining that situation, you have to base it upon all the evidence that was presented with regard to that issue.

The District Court's instructions set forth a requirement for the buyer to give the seller reasonable notice of a defect, as well as a requirement for the buyer to give the seller a reasonable time to cure the defect. One of the challenges in this case is finding the legal basis for requiring Vanalt to give Selco an opportunity to cure. The District Court was apparently guided by the parties' proposed jury instructions, which stated that the seller must be given a reasonable time to cure.[3] The parties supported that part of their proposed instructions[4] with citations to Sections 2508 and 2607 of the Pennsylvania UCC and four cases that interpret the requirements of Section 2508.[5] Thus, the parties

---

> . . . .
>
> . . . I told you about the burden of proof, I told you that the defendant has the burden of proving whether or not sufficient time to cure was given here.

[3]Selco asked for the following instruction: "When a buyer accepts a product from a seller, and the buyer seasonably notifies the seller that the seller's product is nonconforming, the seller must be given a reasonable time to cure the nonconformity." Vanalt, in turn, asked for the following: "When a buyer purchases goods from a seller that are nonconforming, below commercial standards and/or otherwise unfit for the buyer's purpose, as here, the law provides that the buyer must, within a reasonable time, provide the seller with notice of the problem and thereby provide the seller with a reasonable time and opportunity to cure the breach."

[4]Additional citations in the proposed instructions, to Pennsylvania model jury instructions and UCC Section 2515, relate to the definition of "reasonable time" and the seller's right to inspect the goods, not to the issue of whether the seller must be given an opportunity to cure.

[5]*Universal Mach. Co. v. Rickburn Enters.*, Civ. A. No. 90-6530, 1992 WL 180128 (E.D. Pa. July 23, 1992); *Barrack v. Kolea*, 651 A.2d 149 (Pa. Super. Ct. 1994); *Koppers Co. v. Brunswick Corp.*, 303 A.2d 32 (Pa. Super. Ct. 1973); *Fowler & Williams, Inc. v. Int'l Lithographing*, 4 Phila. Co. Rptr. 168, 1980 WL 194195 (Pa. Ct. Com. Pl. June 17, 1980).

imply that the opportunity-to-cure requirement arises from either Section 2508 or Section 2607. The difficulty here is that neither section appears to impose that requirement in a case such as this.

If the buyer rejects goods as nonconforming, Section 2508 provides the seller with an opportunity to cure the nonconformity if the time for performance under the contract has not expired or if the seller had reasonable grounds to believe the nonconformity would be acceptable. 13 Pa. Cons. Stat. § 2508.[6] However, that opportunity-to-cure requirement only applies when the buyer has rejected the goods. Here, during the failed attempts to resolve the nonconformity, Vanalt made it clear to Selco that the connectors had been paid for and were SEPTA's property. Rather than returning the connectors to Selco, Vanalt fixed the connectors itself. Selco acknowledges that "[i]t is undisputed that

---

[6]The statute reads:

> (a) General rule.–Where any tender or delivery by the seller is rejected because nonconforming and the time of performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

> (b) Rejection of tender which seller believed acceptable.–Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.

13 Pa. Cons. Stat. § 2508.

9

Vanalt accepted Selco's goods." Selco Opening Brief at 47. Since it is thus clear that Vanalt did not reject the connectors, Section 2508 does not apply.

Section 2607, on the other hand, applies when the buyer alleges a breach related to goods that have been accepted. Again, a buyer that has accepted goods "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 13 Pa. Cons. Stat. § 2607(c)(1). However, while a Comment accompanying Section 2607 states that such notice may "open[] the way for normal settlement through negotiation," 13 Pa. Cons. Stat. § 2607, Official Comment No. 4, the statute does not, by its terms, require the buyer, having given notice, to allow the seller additional time to cure the defect. The same Comment states that "[t]he content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." *Id*. Thus, Section 2607 simply required Vanalt to give reasonable notice to Selco that there was a problem with the connectors, so that the parties could have a reasonable opportunity to resolve Vanalt's concerns.

In this appeal, both Selco and Vanalt argue over the interpretation of Section 2607. Focusing on the proper burden of proof with respect to reasonable notice under Section 2607, rather than on the opportunity to cure, we understand the parties' arguments to be as follows. Selco contends that reasonable notice is an element of breach, so the buyer, to prove its case, has the burden of proving that it gave reasonable notice. Vanalt rejoins

10

that the notice required by Section 2607 is notice of the breach, which plainly indicates that the breach must exist before the notice. Selco has offered no precedent to support its view that there is no breach until after notice has been given, and we find Vanalt's reasoning the more persuasive.

That does not end the inquiry, however, because even if notice is not necessary to a finding of breach, it may still be a prerequisite to recovery for breach, and, hence, the burden of proof would still be on the buyer. Indeed, our review of Pennsylvania precedent and other authorities interpreting the UCC indicates that the Pennsylvania Supreme Court would agree that a buyer must prove compliance with Section 2607 before recovering for a breach of contract or warranty involving nonconforming goods as in this case. First, at least one Pennsylvania court has concluded, in the context of a motion to dismiss, that, rather than being an affirmative defense, "reasonable notification is a condition precedent to recovery, and, therefore, the claimant has the burden of pleading compliance with Section 2607(c)'s requirements." *Beneficial Commercial Corp. v. Brueck*, 23 Pa. D. & C.3d 34, 39 (Pa. Ct. Com. Pl. 1982). Second, several other courts interpreting the analogous section in the Uniform Commercial Code enactments of other states have concluded that the buyer must prove compliance with the notice requirement in order to receive any remedy for breach. *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 823 (6th Cir. 1978) (Ohio statute) ("[I]nasmuch as section 2-607 operates as a condition precedent to any recovery, the burden of proof is on the

11

plaintiff to show that notice was given within a reasonable time."); *Rich's Restaurant, Inc. v. McFann Enters., Inc.*, 570 P.2d 1305, 1306 (Colo. Ct. App. 1977) (Colorado statute) (agreeing with the trial court that "notice of breach of warranty is in the nature of a condition precedent to recovery" and that "proof of notice was an essential feature of plaintiff's case"); *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So.2d 1262, 1264 (Fla. Dist. Ct. App. 1980) (Florida statute) ("[T]he burden is on the plaintiff to show that he gave the required notice within a reasonable time.") (citations omitted); *Maybank v. S. S. Kresge Co.*, 273 S.E.2d 681, 683 (N.C. 1981) (North Carolina statute) ("We think it obvious from the language of the statute that seasonable notification is a condition precedent to the plaintiff-buyer's recovery. Thus, the burden of pleading and proving that seasonable notification has been given is on the buyer.") (citations omitted); *Hepper v. Triple U Enters., Inc.*, 388 N.W.2d 525, 527 (S.D. 1986) (South Dakota statute) ("Notice is an element that must be specifically proven; it is not an affirmative defense."). Thus, the dominant position appears to be that, in a dispute over the sale of goods, the buyer must prove compliance with the notice requirement of Section 2607.[7] That result does not imply that the breach is incomplete until notice is given. Rather, as the foregoing cases hold, reasonable notice is a precondition to the buyer's recovery for the breach.

---

[7]We have found only one case to the contrary. In *Jones v. Cranman's Sporting Goods*, the Georgia Court of Appeals concluded that summary judgment for the defendant was improper in the absence of any evidence of notice, "[s]ince the burden was on the defendant to establish that no notice was given . . . ." 237 S.E.2d 402, 404 (Ga. Ct. App. 1977).

12

Because we conclude that the Pennsylvania Supreme Court would place the burden of proving reasonable notice on the buyer, it follows that the District Court's instruction on this point was an incorrect statement of the law. Vanalt contends that, even if the District Court was in error, the error was harmless, but that is not so.[8] Selco had argued

---

[8] Judge Fisher in his concurrence concludes that the error in the jury instruction was harmless, since "Selco never argued that the timing of the notice was unreasonable ... ." While Selco's position was not preserved with perfect clarity, we are nevertheless persuaded that Selco raised and preserved that argument for appeal.

It is true that Selco does not contest that it received a letter from Vanalt in December 2002 describing problems with the connectors. However, Selco did contest whether that letter constituted reasonable notice, because delivery of the connectors began some six months earlier, in June 2002. At trial, Selco argued: "So, what kind of opportunity did SELCO have here? Was it a reasonable opportunity? Well, Vanalt notified SELCO in December of 2002, about a month after the problems arose and about six months after delivery. Then SELCO responded." Later, while discussing mitigation of damages, Selco argued: "Does it make sense to you that an experienced electrical contractor [Vanalt] will wait months and months after he's installed these connectors to do any testing? Did Vanalt even test each section as it went in? . . . No. They waited until everything was in and then they tested it and they found problems." In our view, those arguments adequately set forth Selco's position that Vanalt was unreasonable in failing to give notice until several months after delivery began. *Cf. Int'l Union of Electronic, Electric, Salaried, Mach. & Furniture Workers v. Murata Erie N. Am., Inc.*, 980 F.2d 889, 902 n.12 (3d Cir. 1992) (concluding that the defendant's position was sufficiently clear from its recitation of the facts to preserve that position). The District Court apparently agreed that reasonable notice was an issue at trial, because, significantly, it instructed the jury on that issue. *See Murata*, 980 F.2d at 898 n.6 (concluding that the District Court's treatment of an issue as part of the case supported conclusion that the issue was adequately raised).

Thus, while Selco agreed that it received notice in December 2002, it argued, and a reasonable jury could have concluded, that such notice was not reasonable under the circumstances. The error in the jury instructions was therefore not harmless. *Cf. Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006) (concluding that an error was not harmless because "but for [the] error a reasonable jury could have found in favor of [the plaintiff]").

13

that the alleged five month delay between delivery and notice of breach was not reasonable. The reasonableness of that five month notice is thus a fact issue for the jury, *Standard Alliance*, 587 F.2d at 823, to be decided with the burden of proof placed on Vanalt. Because the issue is notice under Section 2607 rather than opportunity to cure, the relevant questions include when Selco first received notice of a problem and whether that notice was given within a reasonable time after Vanalt discovered or should have discovered the problem.

### IV.

Selco also argues that the District Court erred in admitting particular expert testimony and other evidence that Selco contends was unfairly prejudicial. As we write solely for the benefit of the parties, we need not dilate on these evidentiary rulings. Suffice it to say we have reviewed the rulings for abuse of discretion, *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 856 n.33 (3d Cir. 1990), and, in light of the record, have concluded that there was no abuse of discretion in admitting the evidence of which Selco complains.

As for Vanalt's cross-appeal regarding prejudgment interest, we agree with the District Court that Vanalt is not entitled to prejudgment interest as a matter of right under Pennsylvania law. *See Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F.2d 941, 943-44 (3d Cir. 1984). We also conclude that, on this record, the District Court did not abuse its discretion in choosing not to award prejudgment interest. However, because we will

14

vacate the judgment and remand for a new trial, we will also vacate the order denying prejudgment interest. While we do not imply that the result should be different after the new trial, we do not wish to tie the District Court's hands in its consideration of the issue in light of the record that develops on remand.

## V.

The legal errors discussed above require us to vacate the damages award against Selco. Those errors, however, are unrelated to the jury's determination that Selco breached its contract and express and implied warranties. Therefore, we leave those determinations intact, but will remand the case for a new trial to determine (1) whether the limitation of liability term that Selco says it added to the contract was indeed communicated to Vanalt and accepted as part of the contract in this case; (2) whether Vanalt provided reasonable notice to Selco of the breach; and (3) the amount of damages, if any, owed to Vanalt by Selco.[9]

---

[9]Because we will vacate the damages award, we do not reach the issue of whether Vanalt's damages may properly be calculated using the *Eichleay* formula for unabsorbed home office overhead. *Eichleay Corp.*, A.S.B.C.A. No. 5183, 60-2 B.C.A. (CCH) ¶ 2688, 1960 WL 538 (July 29, 1960), *aff'd on reconsideration* 61-1 B.C.A. (CCH) ¶ 2894, 1960 WL 684 (Dec. 27, 1960). While we reject Selco's argument that the *Eichleay* formula may only be used in disputes involving government contracts, the District Court should make a determination on the record whether Vanalt has established the prima facie elements to support the use of the *Eichleay* formula in the present case.

15

FISHER, *Circuit Judge*, concurring.

Although I agree with the result reached by the majority, I write separately as I disagree with the harmless error analysis based on the parties' arguments in this case. While the case law in this area is limited, I agree with the majority's determination that the buyer has the burden of proving breach and that it provided notice within a reasonable time to the seller that a breach occurred. The District Court's jury instructions treated notice and opportunity to cure as an affirmative defense thereby improperly placing the burden on Selco. Although the instruction was improper, I believe that it was harmless error.

As discussed by the majority, Vanalt had the burden of proving that it provided Selco with notice of the breach within a reasonable time. Such notice provides a seller with a reasonable time to cure. Although the focus is on notice, the parties mistakenly focus on whether there was a reasonable opportunity to cure. This improper focus is what leads me to depart from the majority's analysis.

Selco admitted at trial and in its briefs to this Court that Vanalt provided it with notice. Selco never argued that the timing of the notice was unreasonable, rather its argument was limited to a claim that Vanalt did not provide it with a reasonable opportunity to cure. As the majority points out, in its closing argument Selco stated: "So, what kind of opportunity did Selco have here? Was it a reasonable opportunity?" Opportunity refers to the opportunity to cure, not whether Vanalt provided reasonable

16

notice.  The argument regarding mitigation of damages similarly does not raise any issue regarding the reasonableness of the notice provided.  Therefore, Selco admitted that Vanalt met its burden of proving notice.

Selco's admission makes the flawed jury instructions a harmless error.  An error is harmless "only if it is highly probable that the error did not affect the outcome of the case."  *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005).  The admission of receipt of notice makes it highly probable that the improper jury instruction did not affect the outcome of the case.  Although the error was harmless, on remand, the District Court's jury instruction should place the burden of proving notice on Vanalt.  Therefore, I concur in the outcome of this case.